for such party in the action was sufficient notice to the defendant, and made the order or judgment, whatever it may be called, binding upon the defendant. Every fact it seems to me existed which was necessary to give the court jurisdiction. The plaintiff in the action then before the court appeared by an attorney asking for the intervention of the court to endeavor to procure for him payment of his claim against these assignors who resided in the jurisdiction in which the court was administering justice. The intervention of the court by which it had undertaken to administer the estate of the assignors, the receipt by an officer of the court of the property of the assignors for distribution among its creditors, the payment of a portion of the money by the officer of the court to one of the plaintiffs in the action before the court to which that plaintiff was not entitled, the appearance before the court of the attorney who had appeared for the plaintiff, and a final determination by the court that the plaintiff who had received a sum of money from its receiver should repay that money to the receiver, and a formal legal judgment to that effect, duly entered, bound a person against whom the judgment was directed, and the courts of this state are required to give full faith and credit to that order or judgment and enforce it.

It is suggested that Bledsoe, this present defendant's attorney, did not properly protect his client's interest and apparently intervened individually so as to be protected as against his client in any judgment that the court render in relation to the proceeding; but, if that is so, this defendant has a remedy against his attorney who failed to protect him. It cannot affect the jurisdiction of the court who had the parties and their attorneys before it and who were required to prevent a misapplication of the funds in court which were applicable to the payment of certain claims presented to the court and which the court was engaged in administering.

I think, therefore, that this judgment, until reversed or vacated, was an adjudication which bound the defendant, and the courts of this state are bound to enforce it.

I think that the judgment should be reversed.

McLAUGHLIN, J., concurs.

---

COHEN v. GIVEEN MFG. CO.

(Supreme Court, Appellate Division, First Department. December 30, 1910.)

1. CONTRACTS (§ 176*)—CONSTRUCTION—ACCRUAL—QUESTION FOR JURY.
    Insured having suffered a fire loss assigned his policies to defendant, whereupon at defendant's request plaintiff loaned to insured $1.000 pursuant to a contract by which defendant by its treasurer agreed to repay plaintiff "on receipt of payment of fire insurance policies pertaining to" insured's loss. *Held*, that the time provided in such instrument for payment to plaintiff was uncertain, and hence plaintiff was entitled to go to the jury on the question whether a cause of action accrued on defendant's

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

collecting $1,000 from such insurance, on parol proof that such was the understanding between the parties at the time the advances were made.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 176.*]

2. PLEADING (§ 427*)—OBJECTION TO EVIDENCE AS OUTSIDE OF ISSUES—WAIVER.

Defendant, by his failure to object, as not within the issues, to parol evidence of the actual agreement of the parties, offered on the ground that the written contract was ambiguous, waived any objection to the form of the complaint, and cannot rely on the objection on appeal.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1428–1432; Dec. Dig. § 427.*]

Laughlin and McLaughlin, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by Abraham Cohen against the Giveen Manufacturing Company. From a judgment dismissing the complaint, plaintiff appeals. Reversed. •

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, MILLER, and DOWLING, JJ.

Joseph S. Rosalsky, for appellant.
Julius M. Lowenstein, for respondent.

INGRAHAM, P. J. The complaint alleges that on the 17th of October, 1909, certain fire insurance policies owned by one Ehrlich were transferred and assigned to the defendant by said Ehrlich; that, at the special request of the defendant, the plaintiff paid to the said Ehrlich the sum of $1,000, and that on the 3d of February, 1909, the defendant entered into an agreement with the plaintiff, whereby defendant in consideration of the foregoing agreed to pay the plaintiff the sum of $1,000 upon the receipt by the defendant of the payment of the loss sustained by the said Ehrlich on certain fire insurance policies thereinbefore stated to have been assigned to the defendant. The allegations of this complaint are not entirely clear as to when the obligation of the defendant to pay to the plaintiff this sum of $1,-000 accrued. It is alleged that the defendant was to pay to the plaintiff this sum of money on "the payment of the loss sustained by the said A. N. Ehrlich on the certain fire insurance policies aforestated, as hereinbefore stated, to have been assigned." The answer of the defendant denies the allegations of the complaint to which attention has been called, and then sets up a separate defense which is not material upon this appeal.

Upon the trial the defendant conceded that the aggregate amount of the policies assigned to it was $15,500, of which approximately $8,100 had been collected to the date of the trial, and that actions were pending against insurance companies for the balance, and that about $5,500 had been collected on these policies prior to the commencement of the action. The plaintiff was then called as a witness, and testified without objection that Ehrlich introduced plaintiff to one Gans and stated to Gans in the presence of the plaintiff that plaintiff was the man that he (Ehrlich) "was talking to you before about—he wants to loan me $1,000 and you will give him a writing," when plain-

tiff said, "Yes; I will give him $1,000 if you will give me a writing— a written order for it;" that Ehrlich then said, "Give him (plaintiff) a written order, and then I will give you a writing for $1,000;" that Gans then spoke to one of his employés who went out and in a few moments brought in a paper; that after reading this paper Gans said to Ehrlich, "You shall give me a writing;" that Ehrlich then gave to Gans a note when Gans took the paper, signed it, put a stamp on it, and gave it to the plaintiff. This paper was introduced in evidence and is as follows:

"I, the undersigned, L. L. Gans, treasurer of the Giveen Manufacturing Company, agree to pay Abraham Cohen, one thousand ($1,000) dollars upon receipt of payment of fire insurance policies, pertaining A. N. Ehrlich's loss by fire.                                    Giveen Mfg. Co.,
                                          "L. L. Gans, Treasurer."

Plaintiff then testified that he read this paper over, but not being able to read English well, and noticing that the paper said something about fire insurance policies, said to Gans, "What has that got to do with me?" to which Gans replied, "That is all right; * * * you will get your $1,000 the first money what we will get in from the fire insurance policies; that plaintiff asked, "How long will it take to get my money, the $1,000?" and Gans answered, "It will take a couple of weeks;" that at the end of two weeks plaintiff asked Gans for the money, when Gans said, "We did not receive any money yet, but the first money that will come, you will get your $1,000;" that he subsequently again asked for his money when Gans said, "We have no money yet; when we will get in the first money, you will get your $1,000." Plaintiff paid Ehrlich the $1,000 upon the day of the first conversation. Gans was then called as a witness for the plaintiff, and testified that he was one of the organizers of the defendant, and at the time of the making of this contract was its president and treasurer and also a director; that his duties consisted of signing checks, looking after the general management of the defendant's business, supervising and taking a general observation of all that was going on; that he signed the instrument introduced in evidence; that the fire insurance policies of Ehrlich were assigned to the defendant and the defendant had received part of the benefits of the assignment; that at the time he signed this contract for the defendant he had power to sign contracts. The plaintiff then rested, and defendant moved to dismiss the complaint on the ground that, according to the agreement, "it provides upon payment of the policies, and it does not mean one, two or three, but it means the payment of all the policies." The plaintiff claimed that the agreement was ambiguous, and that the agreement of the parties was that plaintiff should be paid out of the first payment that was received by the defendant on account of these policies. The court held that there was nothing ambiguous about the contract, but that it means that the defendant agreed to pay the plaintiff upon receipt of payment of the policies which did not mean one policy but meant them all, and that the action had been prematurely brought. The motion to dismiss the complaint was thereupon granted, to which the plaintiff excepted.

I think upon the plaintiff's testimony there was a question for the jury as to the exact agreement between the parties which was represented by this instrument introduced in evidence. Ehrlich had assigned the policies of insurance to the defendant under which the defendant was to collect the amounts due to Ehrlich upon these policies. The relation between the defendant and Ehrlich and the consideration which was paid by the defendant to Ehrlich for this assignment are not stated. We have simply the facts admitted that Ehrlich had assigned the 16 policies of insurance to the defendant, which would entitle the defendant to collect from the insurance companies the amounts due to Ehrlich upon these policies, and that the plaintiff paid to Ehrlich the sum of $1,000 upon receiving from the defendant an agreement by which the defendant agreed to repay to the plaintiff this sum of $1,000, "upon receipt of payment of fire insurance policies pertaining to A. N. Ehrlich's loss by fire." Whether it was the receipt of the amounts due upon all the policies was not expressly stated, nor was it stated that the sum of $1,000 should be paid to plaintiff upon the receipt by defendant of any proportion of the policies or when the defendant had received the sum of $1,000 on account of the policies. The defendant did agree to pay plaintiff $1,000 upon receipt of "payment" on the fire insurance policies, and for this promise plaintiff paid to Ehrlich $1,000. At, least, this instrument was capable of the construction that the defendant was to repay the plaintiff $1,000 when he had received a payment of that amount from the insurance companies on these policies. It could not have been the intention of the parties that the plaintiff was to receive nothing until all the policies were collected for then a failure of one of the insurance companies to pay or defendant's inability to collect from any one of them would have entirely destroyed the defendant's obligation. Nor is it clear from this agreement that the plaintiff was bound to wait until all that was collectible upon these policies had been received before being repaid. It seems to me that this instrument could be construed as meaning that, when defendant had received $1,000 from the insurance companies, it was to pay it to plaintiff as well as the construction claimed by the defendant, and there was therefore an ambiguity which justified the court in receiving parol evidence of the actual agreement between the parties. It is said, however, that the complaint as drawn precludes such a construction of the agreement as it is not therein specifically alleged that plaintiff was entitled to receive the $1,000 out of the first moneys paid to the defendant on account of the policies, and that, as no application was made to amend the complaint, we cannot consider the complaint amended for the purpose of reversing the judgment. But the defendant by failing to object to the receipt of evidence as to the actual agreement between the parties waived any objection to the form of the complaint, and, as the defendant did not at the trial take the point that the complaint was not sufficient to justify the giving of evidence as to the actual agreement between the parties, it cannot now insist on such an objection.

The motion for a direction of a verdict was made upon the ground

that the instrument itself was not ambiguous, and that, under the instrument, it was necessary to prove that the defendant had received all the moneys payable under these policies which was the point sustained by the court in its dismissal of the complaint.    It seems to me that upon the evidence as it stood when plaintiff rested which had been admitted without objection by the defendant the real question presented to the court was as to whether or not upon the evidence the plaintiff was entitled to recover, and upon the evidence as it stood I think there was at least a question for the jury as to the actual agreement upon which the plaintiff had advanced the money.    I concede that the complaint itself was as ambiguous as to the time of payment as was the instrument upon which plaintiff based his cause of action; but where the defense to the action was based solely upon the fact that the agreement itself was conclusive, and failing to object to the admission of testimony as to the actual agreement that existed without claiming that the complaint was not sufficient to justify the admission of such evidence or to justify a recovery by the plaintiff based upon the actual contract that was made, the defendant cannot on appeal sustain a nonsuit because, if he had objected that the evidence was not admissible under the pleadings, that objection could have been easily obviated by an amendment. Upon this evidence I think the jury would have been justified in finding that the plaintiff parted with his money upon the understanding that upon the receipt of money upon the policies sufficient to repay him he was to receive the amount advanced, and, as the defendant admitted receiving before the commencement of the action at least $5,500 on account of these policies, the plaintiff was then entitled to be repaid if it should be found by the jury that that was the express agreement under which the money was advanced.

It follows, therefore, that the judgment appealed from should be reversed, and a new trial granted, with costs to the appellant to abide the event.

MILLER and DOWLING, JJ., concur.

LAUGHLIN, J. (dissenting).    The nonsuit was granted on the ground that the action was brought prematurely.

It was admitted on the trial that one A. N. Ehrlich assigned to the defendant 16 fire insurance policies aggregating $15,500 as security for an indebtedness owing by him to the defendant; that thereafter the property covered by the insurance policies was damaged or destroyed by fire, and prior to the commencement of the action the defendant had collected on the policies the sum of $5,500, and that actions are pending for the recovery of the balance.    According to the testimony of the plaintiff and to inferences that may reasonably be drawn therefrom, at the time of or after assigning the policies to the defendant he had an interview with one Gans who was president and treasurer of the defendant with respect to giving the plaintiff a writing or order as a condition of plaintiff's loaning to Ehrlich the sum of $1,000, and Ehrlich thereafter gave Gans an order in writing

the contents of which were not shown, but upon it Gans executed and delivered to the plaintiff a writing as follows:

"I, the undersigned, L. L. Gans, treasurer of the Giveen Manufacturing. Company, agree to pay Abraham Cohen, one thousand ($1,000) dollars upon receipt of payment of fire insurance policies, pertaining A. N. Ehrlich's loss by fire.    Giveen Mfg. Co.,
    "L. L. Gans, Treasurer."

No question is raised with respect to the authority of Gans to act for the defendant in the premises. The plaintiff claims to have made out a prima facie case on the theory that the writing quoted was ambiguous, and that the parol evidence received without objection shows that the defendant agreed to pay the plaintiff out of the first moneys received on the insurance policies. The appellant contends that the contract is not ambiguous, and that the complaint was framed on the theory that the plaintiff was only entitled to recover after the defendant collected all that was collectible on the insurance policies, and that, as no amendment of the complaint was asked for or allowed, it cannot be amended on appeal for the purpose of reversing the judgment. It is alleged in the complaint that certain fire insurance policies were assigned by Ehrlich to defendant on October 17, 1908; that plaintiff paid to Ehrlich $1,000 at the special instance and request of the defendant; that on or about the 3d day of February, 1909, the defendant in consideration of said payment entered into an agreement with the plaintiff, whereby it agreed to pay to him "the sum of one thousand ($1,000) dollars, upon receipt by the defendant of the payment of the loss sustained by the said A. N. Ehrlich, on the certain fire insurance policies, aforestated, as hereinbefore stated, to have been assigned," and "that the loss on the insurance policies aforedescribed has been paid." It will thus be seen that both by the provisions of the contract and by the allegations of the complaint the plaintiff was to be paid when the defendant received payment on the insurance policies of the loss sustained by Ehrlich. Of course, the contract was susceptible to parol proof to identify the policies and thus show the loss to which that relates; but, when it was shown that Ehrlich assigned 16 policies representing an aggregate insurance of $15,500, then I think there was left no ambiguity in the contract, and the plaintiff could not recover without showing that the whole amount of the insurance had been collected, or that it had been collected so far as collectible, or that the defendant had not proceeded with due diligence in collecting it and that a reasonable time therefor had elapsed. So likewise, under the allegations of the complaint, the plaintiff was only entitled to recover on like proof, for that is the theory of the action as disclosed by the complaint, and even though a recovery on another theory might have been sustained had the complaint been amended, or even though it might have been amended on appeal to sustain a recovery on another theory, it cannot be amended on appeal to bring about a reversal.

I therefore dissent from the reversal of the judgment and vote to affirm it.

McLAUGHLIN, J., concurs.